Fannie McMahon, Trustee, *et al.* Appellees, *vs.* Harriet B. Borland, Appellant.

*Opinion filed February 21, 1914—Rehearing denied April 9, 1914.*

1. Evidence—*what sufficient preliminary proof to justify admitting copy of plat.* An affidavit attached to a copy of a plat, to the effect that the affiant is assistant secretary of a certain trust company; that the attached plat is a true copy from an original letter-press copy of an abstract of title formerly belonging to a named co-partnership; that the abstract of title from which the letter-press copy was made was, as the affiant is informed and believes, made by such co-partnership from the records in the office of the recorder of deeds in Cook county, Illinois, in the due and ordinary course of their business as abstract makers, prior to the destruction of the records in the recorder's office, which occurred on or about October 8 and 9, 1871; that said letter-press copy was at the date of the destruction of such records in the possession of such co-partnership, which was then engaged in the making of abstracts of title for others for hire and is now in the possession of the affiant's company, is a sufficient compliance with section 24 of the Burnt Records act to entitle the copy of the plat to admission.

2. Dedication—*what sufficient common law dedication and acceptance of alley.* Proof that a strip of ground has been in use as an alley for over fifty years, that the lot owners on both sides thereof petitioned the city council to lay a sewer in and plank the alley, which was done and the work paid for by special assessment levied upon the lots on both sides of the alley, and that later the alley was paved by the city and the pavement paid for by an assessment against the lots on both sides, shows a common law dedication and acceptance of the strip as a public alley.

3. Same—*effect where plat is not acknowledged and recorded until holder of legal title has conveyed it.* Where a plat made by the holder of the legal title in trust is not acknowledged and recorded until after the maker has conveyed the legal title to the beneficial owners the plat is not good as a statutory dedication, but if such owners thereafter recognize the subdivision and act upon it in making conveyances the plat is good as a common law dedication.

4. Limitations—*when title must be held to be acquired by adverse possession.* Where a lot has an alley crossing the rear portion thereof in such a way as to leave a narrow strip of the lot outside of the alley and the owner never has possession of nor asserts title to such strip, which for more than twenty years has been in the adverse possession of the owners of the lots on the opposite

side of the alley, who claim their lots extend to the alley and include the strip in question, the latter must be regarded as the owners of such strip by adverse possession and are entitled to have their title protected.

APPEAL from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

TOLMAN & REDFIELD, and HENRY P. CHANDLER, for appellant.

BULKLEY, GRAY & MORE, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellees filed their bill in chancery in the circuit court of Cook county to declare and quiet title to land and to enjoin alleged trespasses. The bill, in substance, alleged appellee Fannie McMahon was the owner of the south half of lot 4 in block 126, School Section addition to Chicago, being section 16, town 39, north, range 14, east of the third principal meridian; that appellee Mary A. Crowe was the owner of the north half of lot 9 in said block; that each of said parcels is 25 feet wide, fronting on the east side of Clark street, and running east 100 feet to and abutting upon an alley 10 feet wide, which runs north and south through said block 126; that they and their predecessors in title have since 1866 enclosed and occupied said lands their full depth of 100 feet; that the alley running north and south through the block was laid out and dedicated to the public use as an alley prior to 1866; that it is 10 feet wide, and its east line is 100 feet west of the west line of Federal street and its west line is 100 feet east of the east line of Clark street; that said alley is a continuation of an alley laid out by a plat of a subdivision of block 125, which lies immediately north of block 126. The bill further alleges appellant, Harriet B. Borland, owns lots 5, 8, 11, 14 and 17 in block 126, east of said alley and fronting on Federal

street; that the lots on each side of said alley, fronting upon Clark street and Federal street, are 100 feet deep, but that appellant claims said alley is a private alley laid out over her own land; that she owns the fee under it and 4.5 feet west of the west line of the alley; that she claims her lots are 115 feet deep from the west line of Federal street and that appellees' lots are only 95.5 feet in depth from the east line of Clark street; that appellant has begun the construction of a large building on her lots, and without notice to or permit from appellees or the city of Chicago has commenced to excavate said alley and to erect upon the property of appellees, 4.5 feet west of the alley, a certain concrete structure for her private use, and that she has torn down fences and sheds of appellees on their property. The bill further avers that upon complaint to the city of Chicago by appellees the work of excavation and construction was stopped temporarily by the city, but as appellant claimed the fee in the alley the city of Chicago advised appellees that if appellant should demand and request a permit to use the said 10-foot strip for construction purposes it would be issued to her. The bill alleges that the city has no power to grant such permit to appellant or anyone else to obstruct or encumber the alley, either above or below the surface of the ground; that such use of said alley would greatly injure and inconvenience appellees and the public. The prayer of the bill is that the south half of lot 4 and the north half of lot 9, respectively, be decreed to be in appellees, respectively, for a depth of 100 feet from the east line of Clark street to the west line of said 10-foot alley, and that appellant be enjoined from further proceeding with the work upon or below the surface of the alley or upon the premises of appellees west of the alley; that the city of Chicago be enjoined from issuing a permit to any person to tear up the alley or place any construction thereunder which would in any way interfere with any public purpose for which the alley might thereafter be desired

to be used by said city, and that appellant and other co-defendants named account to appellees for the cost of restoring the premises and alley to their normal condition.

In her answer to the bill appellant denied the continuous possession of appellees' lots to the depth of 100 feet east of the east line of Clark street; denied that an alley was laid out by the owners of block 126, the east line of which was 100 feet west of the west line of Federal street and the west line of which was 100 feet east of the east line of Clark street, and denied that appellees or their predecessors in title had fenced, occupied and controlled the south half of lot 4 and the north half of lot 9 to the depth of 100 feet from the east line of Clark street. The answer avers that appellant's lots extend from the west line of Federal street west 115 feet; that the west line of her lots is 115 feet west of and parallel with the west line of Federal street; that the owners of lots in said block fronting on Federal street used the west 15 feet off the Federal street lots for a private alley, and that travel over said alley by the owners of the lots fronting on Clark street, and by the public, was permissive until such time as the owners of the Federal street lots should desire to improve them. The answer denies that the owners of lots fronting on Clark street own all the property in said block west of the west line of the alley, and avers that appellees and their grantors well knew the lots fronting on Federal street extended west from the west line of said street 115 feet, and that none of the grantors of appellees claimed any rights in the alley and well knew that travel over it was permissive, only. The answer avers that appellant is the owner of the fee in the premises referred to as an alley and has the right to construct vaults under the surface; that block 126 was subdivided June 19, 1836, by J. C. Goodhue into twenty-four lots; that the lots fronting west on Clark street, in said block, were laid out with a depth of 115.5 feet; that the lots fronting east on Federal street were laid out with a depth of 115 feet, the

west line of the Federal street lots and the east line of the Clark street lots being the same; that Clark street was widened in 1846 and 20 feet taken off the west end of the Clark street lots in block 126 by condemnation, for the purpose of widening said street, and that thereafter the lots fronting on Clark street had a depth of only 95.5 feet from the east line of Clark street as widened to the west line of the Federal street lots. Appellant also filed a cross-bill, setting up her claim substantially as set out in her answer, and praying that her title as claimed be quieted to the depth of 115 feet, and that appellees and the city be enjoined from interfering with her use and enjoyment of the premises.

Appellees answered the cross-bill, denying the making of the Goodhue subdivision in 1836, and averring that about that time the block was divided into three tiers of lots, those fronting on Clark street having a depth to the east of 126 feet; the next tier extending east from a north and south line 126 feet east of Clark street 107 feet to a street now known as Federal street and which street was then 40 feet wide; the third tier of lots extending from the east line of Federal street to the west line of Dearborn street 107 feet. The answer avers that subsequently 20 feet was taken off the front of the Clark street lots, leaving the lots fronting on that street with a depth of 106 feet, and that afterwards the owners of the Clark street lots and the Federal street lots laid out a 10-foot alley on the line which divided their respective lots, five feet of said alley being on the lots fronting on Clark street and five feet on the lots fronting on Federal street; that said alley has existed, been paved and used for more than sixty years.

The city of Chicago answered the bill and cross-bill, setting up that an alley had existed in block 126 and for more than forty years had been recognized by the city and all the owners of abutting property. It neither admitted nor denied the allegations as to the dimensions of the lots in said block 126.

The cause was heard by the chancellor and a decree entered finding that appellees' lots were of the depth of 100 feet from the present east line of Clark street running east to the west line of the 10-foot alley, and that they were also the owners of the fee in the west half of the alley subject to the public easement, and accordingly their title was quieted and appellant ordered to remove all construction placed thereon within one year. The cross-bill of appellant was dismissed as to all parties except the city of Chicago. Appellant's right to use the east half of the alley subject to the public easement was recognized by the decree, and the city of Chicago was enjoined from interfering with such use. The record is brought to this court for review by appeal.

It was stipulated on the hearing that appellee Fannie McMahon, as trustee, owned in fee simple the south half of lot 4 in block 126, School Section addition to Chicago, and that appellee Mary A. Crowe owned in fee simple the north half of lot 9 in said block; that neither of them claimed to own any part of the lots fronting on Federal street belonging to appellant, Harriet B. Borland; that appellant owned lots 5, 8, 11, 14 and 17 in said block, fronting on Federal street, and that she did not claim to own any part of the lots belonging to appellees and fronting on Clark street; that there was no statutory dedication of the alley through said block but it was claimed by appellees that it was a public alley by prescription.

To maintain the issues the respective parties introduced oral testimony and a large amount of documentary evidence. The latter consisted of plats, maps and surveys offered for the purpose of showing the size of the lots into which block 126 was subdivided, and the oral testimony, in part, showed the respective claims of the parties as to occupation of the premises for many years. There were such discrepancies between the plats and maps offered in evidence that we deem it inadvisable to set out a copy of any one of them in

this opinion, but will endeavor to make the location, situation and respective claims of the parties as clear as possible by describing them.

There is no dispute that block 126 was subdivided into three tiers of lots, each tier containing eight lots. The west tier fronted west on Clark street, the middle tier fronted east on what is now known and will be referred to as Federal street, and the east tier was on the east side of and fronted west on Federal street. The south half of lot 4 and the north half of lot 9, which is the property in controversy, are adjoining and front west on Clark street. Lots 5, 8, 11, 14 and 17, belonging to appellant, face east on Federal street. For many years an alley has extended north and south through the block, between Clark street and Federal street. Appellant is engaged in the construction of a building upon her lots facing Federal street. She claims her lots are 115 feet deep, which would place the alley all on her lots and give her 4.5 feet on the west side of the alley. This would leave the depth of appellees' lots 95.5 feet. Appellees claim their lots extend to the middle of the alley, and that they and their predecessors in title have for more than fifty years been in the actual possession and occupation of their property 100 feet from the east line of Clark street to the west line of the alley.

To maintain their contention appellees relied largely upon what is known as the Raymond map. This map was procured from the archives of the Chicago Historical Society. The man whose name it bears was at one time mayor of the city of Chicago. From a notation on the map it appears to be a map of the city of Chicago, "with the several additions, compiled from the recorded plats in the clerk's office, Cook county, Illinois." It bears no date, but inscribed upon it is the notation that "the lots in the original town, except those marked with the letter 'S,' together with the lots in fractional section 15, will be offered for sale by the canal commissioners on the 20th day of June, 1836."

It must therefore have been made prior to that date. As shown by this map, the west tier of lots, or those fronting west on Clark street, in block 126 were 126 feet deep, the middle tier, or those fronting east on Federal street, were 107 feet deep, and the east tier, or those fronting west on Federal street, were 107 feet deep. We do not understand that there is any disagreement between the parties that Federal street was originally 40 feet wide. The lots in block 126 are incorrectly numbered on the Raymond map. According to that map the numbering of the subdivision into lots began with lot 1 in the north-west corner, whereas lot 1 properly is in the north-east corner of the block. By this map lots 4 and 9 are in the eastern tier of lots and front west on Federal street, whereas, in fact, they are in the western tier and front on Clark street. Originally Clark street was 40 feet wide. The street immediately south of block 126 is Polk street. Block 125 adjoins block 126 on the north, and Harrison street runs east and west along the north line of block 125. The Raymond map shows Clark street as 80 feet wide north of Harrison street and 40 feet wide south of Harrison street along the west side of blocks 125 and 126. In May, 1846, condemnation proceedings were begun for the widening of Clark street south of Harrison street, and 20 feet off the lots on each side of the street was taken for the street as widened. This proceeding took 20 feet off the west end of the west tier of the lots in block 126, as they all abutted upon the east line of Clark street. The Raymond map shows Federal street as 40 feet wide. Since that map was made Federal street has been widened 10 feet and is now 50 feet in width. This widening appears to have been made some time prior to the great fire. Appellees contend that in widening that street seven feet was taken off the lots abutting it on the east side and three feet off the lots abutting said street on the west side, thereby leaving the lots on the west side of Federal street 104 feet deep according to the Raymond map.

Appellant relies upon a plat made by J. C. Goodhue of a subdivision of said block 126. In the summer of 1835 Goodhue purchased block 126 for Phineas Fisk and Richard Montague, who furnished the money, but Goodhue took the title to himself and held it as trustee for Fisk and Montague. Appellant introduced in evidence a copy of a plat of a subdivision of said block 126 purporting to have been made by Goodhue in July, 1835, acknowledged by him in June, 1836, and recorded July 19, 1836. There is a notation on the plat: "Subdivision by J. C. Goodhue, plat July, 1835, being a subdivision of B. 126, Sec. 16, T. 39 N., R. 14 E. of 3d P. M. Surveyor's certificate dated July, 1835, acknowledged by J. C. Goodhue as proprietor June 24, 1836, before justice of the peace Cook county, who does not say that said Goodhue was personally known to him." The plat purports to have been recorded July 19, 1836, in book "H" of maps, page 82. Neither the original plat nor the record thereof was offered in evidence. The records were destroyed by the great fire of 1871. Attached to the copy of the plat offered is the affidavit of John L. Day, in which he states he is assistant secretary of the Chicago Title and Trust Company; that the attached plat is a true copy from an original letter-press copy of an abstract of title formerly belonging to Jones & Sellers, a co-partnership; that the abstract of title from which the letter-press copy was made was, as affiant is informed and believes, made by Jones & Sellers from the records in the office of the recorder of deeds in Cook county, Illinois, in the due and ordinary course of their business as abstract makers, prior to the destruction of the records in the recorder's office, which occurred on or about October 8 and 9, 1871; that said letter-press copy was at the date of the destruction of the records in the possession of Jones & Sellers, who were then engaged in the making of abstracts of title for others for hire, and which said letter-press copy is now in the possession of the Chicago Title and Trust Company. This was a suffi-

cient compliance with section 24 of chapter 116 of Hurd's Statutes of 1911 to authorize the admission of the copy of the plat in evidence. This plat showed a subdivision of block 126 into three tiers of lots, eight lots to the tier. The lots are properly and correctly numbered on the plat, commencing with lot 1 in the north-east corner of the subdivision. The plat shows the west tier of lots, or those fronting on Clark street, to be 115.5 feet in depth from the east line of Clark street as it then existed. It shows the middle tier of lots, or those fronting east on Federal street, to be 115 feet in depth from the west line of Federal street, and the east tier to be 114.12 feet deep from the east line of Federal street. If that plat is correct, the lots facing Clark street were reduced in depth by taking 20 feet off the west end of those lots when Clark street was widened, which would leave them 95.5 feet deep. The Goodhue plat shows no alley through the block, and it is not disputed that the alley was opened some years subsequent to the date of that plat. According to the Goodhue plat the alley as it now exists is all on the lots facing east on Federal street, and those lots extend 4.5 feet west of the alley. This is the claim of appellant.

Appellees also offered in evidence what is known in the record as the Bushnell map. It purports to show "additions, subdivisions, etc., compiled from the most authentic sources by M. H. Bushnell, 1847." It is numbered the same as the Goodhue plat, and shows the lots fronting on Clark street to be 115.5 feet deep and the lots fronting east on Federal street to be the same depth. No alley is shown between the two tiers of lots. Clark street appears to be of uniform width both north and south of Harrison street, but the width is not marked on the map. Appellees concede that it was an impossibility for the Clark street lots to be 115.5 feet deep after that street was widened, but say probably the figures 115 were meant for 105. They also offered a plat of a survey made in 1852 by John von

Horn, which purports to be a survey of lot 21 in said block
126, made at the request of Casper Lauer, the owner, for
the purpose of subdividing the south half of the said lot.
The depth of lot 21 and lot 22, both of which front on
Clark street, is marked as 100 feet from Clark street east
to an alley shown on the plat. The width of the alley is
not shown nor is the width of Clark street. A map known
as the Wolcott plat was also introduced by appellees. It
was taken from a book showing surveys made by Alexander
Wolcott, many years surveyor of Cook county, some time
between 1860 and 1873. According to the testimony it was
probably made in 1870 or 1871. It shows Clark street as
80 feet wide and Federal street as 50 feet wide. The lots
in the subdivision are not numbered on this plat, but the
south lot of the tier fronting on Clark street and the south
lot of the tier fronting on Federal street are marked as
100 feet deep, with an alley 10 feet wide between them.
It seems apparent that the survey from which this plat was
made was not made for the purpose of showing accurately
the subdivisions and the sizes of the lots in the subdivisions.
Block 125, immediately north of block 126, was subdivided
many years before this survey was made, but it is not so
shown on the plat. There are notations and lines in red
ink that indicate the survey was made to show street lines
rather than lot lines. On February 29, 1888, a survey was
made for the owner of the north half of lot 9 by F. C. Ros-
siter, civil engineer and surveyor. The depth of this lot
between Clark street and the alley is noted as 100 feet and
the alley is noted as 10 feet wide.

Appellant offered in evidence a plat attached to an or-
dinance adopted in 1870 defining the location of certain
streets and alleys. It was approved in 1870 and recorded
in book 172 of maps, page 14. It shows Clark street as
80 feet wide, and what was then Fourth avenue but is now
Federal street as 50 feet wide, but no alley is shown in the
block between those two streets. The distance from the

east line of Clark street to the west line of Federal street is given as 210 feet, but the subdivision of the block into lots is not shown. Appellant also offered in evidence a map taken from what is known as the Ogden-Sheldon Atlas. It was made by William P. Davie, a draughtsman, who prior to making it had been employed in the office of Samuel S. Greeley, who testified he had been a surveyor between sixty and seventy years and was elected city surveyor in the spring of 1855. At just what time it was made is somewhat indefinite, but it was before the great fire. This map agrees with the Goodhue plat but shows 20 feet taken off the west end of the Clark street lots in widening that street. It shows Federal street to be 50 feet wide, and indicates it was widened by taking a strip off the west end of the lots on the east side of Federal street. Appellant also offered a plat from a book made by a draughtsman before the great fire for the tax commissioners. This plat gives the depth of the lots fronting on Clark street after that street was widened as 95.5 feet and the lots fronting on Federal street as 115 feet. It indicates that Federal street was widened by taking a strip off the lots facing it on the east side and that nothing was taken off the lots on the west side of the street.

The Goodhue plat was dated July, 1835, was acknowledged June 24, 1836, and was recorded July 19, 1836. In December, 1835, Goodhue conveyed to the beneficial owners the whole of block 126 except lot 2. Before Goodhue made the conveyance to Fisk and Montague they sold lot 2 of the subdivision to Festus Clark, and, pursuant to the directions of Fisk and Montague, Goodhue executed a deed to Clark for said lot January 9, 1836, which was recorded January 20, 1836. This deed, it will be seen, was made by Goodhue in January before the plat was acknowledged in June and recorded in July following. The chancellor held, as appears from the decree, that this sale and conveyance of lot 2 did not amount to a recognition or ratification by

Fisk and Mantague of the Goodhue subdivision, and that as the plat was not acknowledged or recorded until after Goodhue had conveyed all of the block except lot 2 to Fisk and Montague, that plat should not be held as a verity or of such binding force as to conclude the parties. The decree also finds that the plat is inherently inaccurate in its measurements and inconsistent with other acknowledged surveys introduced in evidence and with the physical conditions and occupation for more than fifty years before the commission of the alleged trespasses. The decree is not based upon the accuracy and correctness of the Raymond map. That map, by a notation thereon, purports to have been compiled from recorded plats, but that notation is the only evidence that there ever did exist any plat of block 126 like that shown by the map. The lots are numbered and located radically different from the correct numbers and locations as they are and have been occupied. If we are justified in presuming that because a note on the map says it was compiled from recorded plats that there was a recorded plat when the map was made of which the map is a copy, we are also required to indulge the presumption that after that map was made another plat was made re-numbering the lots as they actually exist and are occupied. We do not think this would be warranted. None of the other plats or maps offered in evidence by appellees purport to be copies of any recorded plat, and some of them, at least, do not appear to have been made with the view of showing the size or lot lines of the lots in the subdivision. It is conclusively shown that Goodhue, while the title was in him as trustee for Fisk and Montague, made a subdivision of the block into twenty-four lots, those facing on Clark street being 115.5 feet deep and those facing on Federal street 115 feet deep. He made a plat of that subdivision, numbering the lots and noting their location as they exist and are now occupied. The chancellor found that there was a plat of the subdivision of· said block 126, other than the Goodhue

plat, recorded and recognized before the fire, showing an alley 10 feet wide, with the lots on either side of it 100 feet deep.   Neither the Raymond map nor the Goodhue plat showed any alley through the block, for there was none in existence at that time, and there is no proof that the alley was ever platted in any plat of the subdivision made by the owner.   It was stated by appellees' counsel as part of the stipulation that he did not claim there was any statutory dedication of the alley but claimed it was a public alley by prescription.   When the alley first came into existence is not definitely shown.   The plat of the survey made by von Horn in April, 1852, shows an alley, so that it must have existed at that time.   In 1854 the lot owners on both sides of the alley petitioned the city council to lay a sewer in and plank the alley with two-inch or three-inch planks. This was done and paid for by an assessment levied upon the lots on both sides of the alley.   In 1883 the alley was paved with cedar blocks by the city and paid for by an assessment against the lots on each side of it.   It cannot be reasonably contended that it is not now a public alley by common law dedication and acceptance.

We do not think the proof sufficient to justify the claim of appellees that when Federal street was widened three feet was taken off the east end of the lots fronting on that street.   Unless a strip was taken off those lots they would remain, according to appellees' proof, the original depth, which was 107 feet.   They assert three feet was taken off the east end of the lots fronting on Federal street when it was widened and seven feet off the end of the lots on the east side of the street.   Edgar A. Rossiter testified to making certain measurements to determine the dividing line between block 135 and block 126.   Block 135 adjoins block 126 on the east.   He testified that according to his measurements Federal street was widened by taking three feet off the west side and seven feet off the east side.   This is not, of itself, very satisfactory proof as to what prop-

erty was taken in widening Federal street. Just when that street was widened is not shown by the testimony. It must have been prior to 1870, for the plat attached to the ordinance of August 16, 1870, defining the location of certain streets and alleys, shows Federal street was then 50 feet wide. The date at which the plat from which the Ogden-Sheldon Atlas was made is left indefinite by the proof. Samuel S. Greeley testified that the man who made it left his service and entered the employment of S. H. Kerfoot, a real estate man, in 1858 or 1860, and that while in Kerfoot's employment he made the plat, which afterward came into possession of the Ogden-Sheldon Company. The witness said he supposed the atlas was made somewhere in 1858 or 1859. The plat shows Federal street was widened by taking a strip off the lots on the east side of the street and does not show anything taken off the west side. The plat from the tax commissioners' book was made, according to the proof, before the great fire, and it indicates Federal street was widened by taking a strip from the lots on the east side of the street and does not indicate anything was taken off the west side.

The maps and plats introduced by appellees, while not agreeing exactly in their measurements, substantially support the contention that the lots facing Clark street and those facing the west side of Federal street were of the same depth after the widening of Clark and Federal streets. The Goodhue plat shows they were substantially the same depth, those facing Clark street having a depth of six inches more than those facing Federal street before the widening of Clark and Federal streets. The other evidence of appellant tends to show 20 feet was taken off the Clark street lots in widening that street, which would reduce them to 95.5 feet. The proof on the part of both parties is in substantial agreement that the distance between the face of the buildings on the east line of Clark street and those on the west line of Federal street is practically 210 feet. As we

have before stated, there is no proof that block 126 was ever subdivided by anyone but Goodhue. John L. Day testified he had been in the abstract business for forty-four years and is now assistant secretary of the Chicago Title and Trust Company; that certain books and papers belonging to firms engaged in the abstract business prior to the great fire were saved from destruction, and among them a letter-press copy of the Goodhue plat, which is used by abstract makers in making abstracts. He testified he had made a search to ascertain whether there was any recorded plat or subdivision of block 126 other than Goodhue's and found that subdivision was the first and only subdivision of said block, and that plat is used as a basis in conveying lots and making abstracts.

If the Goodhue plat is entitled to be considered as authentic, it must follow that appellees' lots are only 95.5 feet deep. We think the proof shows that while Goodhue was the holder of the legal title to block 126 he subdivided it into twenty-four lots, and made a plat, a copy of which was offered in evidence, of said subdivision. He did not acknowledge it, nor was it recorded until after he had conveyed to the beneficial owners all of the said block except lot 2 of the subdivision. After the subdivision and plat were made, and before the conveyance to Fisk and Montague, the latter sold lot 2 to Festus Clark and directed Goodhue to convey the lot to the purchaser, which he did. Thereafter they accepted the conveyance from Goodhue of the block except said lot 2, and after this conveyance was made to Fisk and Montague, Goodhue acknowledged the plat and it was placed on record. In June, 1840, Montague and wife mortgaged to Fisk the undivided half of the block except lot 2, and in October, 1842, conveyed by deed the same property to Fisk. The plat not having been acknowledged or recorded until after the title had passed out of Goodhue would not be a valid statutory dedication, but if, after being acknowledged and recorded, the owners of the

subdivision recognized it and acted upon it in making conveyances, we know of no reason why it would not be a good common law or non-statutory dedication or grant. (*Russell v. City of Lincoln,* 200 Ill. 511; *Gosselin* v. *City of Chicago,* 103 id. 623; *Earll* v. *City of Chicago,* 136 id. 277; *Ryerson* v. *City of Chicago,* 247 id. 185.) The fact that the plat was recognized and acted upon by Fisk and Montague after it was recorded would seem to show that they knew of and ratified it. We do not think it a matter of any particular significance that in conveyances of the property the deeds generally do not refer to the subdivision as Goodhue's subdivision. A number of deeds did so refer to it, and no deed described property in block 126 as being in any other subdivision than Goodhue's.

Without further extending the discussion, which, on account of the complexity of the facts, might be extended indefinitely, it is our conclusion that appellees' lots extend for a depth of 95.5 feet from Clark street and that appellant's lots are 115 feet deep from the west line of Federal street. This would place the alley all on appellant's lots, and their west line would extend 4.5 feet west of the west line of the alley. The proof is absolutely clear that appellant and those under whom she claims have never had possession of their lots beyond the west line of the alley, and it is reasonably clear that for many more than twenty years the owners of appellees' lots have had possession substantially to the west line of the alley. Appellant contends that such possession as appellees and their predecessors in title had was permissive on the part of appellant and that appellees never claimed to own the disputed strip. It is true, appellees never claimed to own any part of appellant's lots, but they did claim that their lots extended from Clark street to the alley and that appellant's lots did not extend west beyond the alley. Until appellant commenced the erection of a building on her lots she had never claimed, so far as the proof shows, to own any land west of the alley. There

is, it is true, some proof on the part of appellant that the fence at the rear of appellees' lots was not always on a line 100 feet east of the east line of Clark street, but it was substantially so, and whatever possession has been had of the 4.5 feet of appellant's lots west of the alley has been that of the occupants of the lots fronting on Clark street, and to our minds the proof of title by adverse possession meets the requirements laid down by the decisions of this court. *Fitzgerald* v. *Quinn*, 165 Ill. 354; *East St. Louis and Carondelet Railway Co.* v. *Nugent*, 147 id. 254; *Hubbard* v. *Stearns*, 86 id. 35; *Kerr* v. *Hitt*, 75 id. 51; *Zirngibl* v. *Calumet and Chicago Canal and Dock Co.* 157 id. 430.

Appellees have by adverse possession for more than twenty years acquired title to said 4.5-foot strip on the west side of the alley, and their title to it should be quieted and they be declared to be the owners of the lots from Clark street to said alley, a depth of 100 feet. The alley exists by virtue of a common law dedication and the fee did not pass to the city. As the alley is wholly upon the lots of appellant, the fee therein is in her, subject to the public easement. Appellees concede this to be correct if the alley is all on appellant's lots, but their claim to any part of the fee in the alley is based upon the claim that one-half of it was taken from their lots. This, in our view, is not sustained by the proof.

The decree is reversed and the cause remanded to the circuit court, with directions to enter a decree declaring and quieting appellees' title to the depth of 100 feet from the east line of Clark street to the west line of the alley, and declaring and quieting the title of appellant, under her cross-bill, from the west line of Federal street to the west line of the alley, with the right to use the ground under the surface of said alley adjoining her lots in such manner as not to interfere with the use of the alley by adjoining lot owners and the public.

*Reversed and remanded, with directions.*